1

1          UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF MISSISSIPPI
2               GREENVILLE DIVISION

3    UNITED STATES OF AMERICA              PLAINTIFF

4    VS.                          NO. 4:20-CR-071-NBB

5    ANTOINE BRYANT, SR.                   DEFENDANT

6

7               SENTENCING HEARING

8

9        BEFORE HONORABLE NEAL B. BIGGERS, JR.
            UNITED STATES DISTRICT JUDGE
10

11              Oxford, Mississippi
                December 13, 2021
12

13   APPEARANCES:

14   For the Government:  ROBERT J. MIMS, ESQUIRE
                         U.S. ATTORNEY'S OFFICE
15                       900 Jefferson Avenue
                         Oxford, Mississippi  38655
16

17   For the Defendant:  MERRILL K. NORDSTROM, ESQUIRE
                         FEDERAL PUBLIC DEFENDER'S OFFICE
18                       1200 Jefferson Avenue
                         Oxford, Mississippi  38655
19

20

21   Court Reporter:     BRENDA D. BLACKBURN, RPR, CCR #1087
                         FEDERAL OFFICIAL COURT REPORTER
22                       305 Main Street
                         Greenville, Mississippi  38701
23

24

25

2

1                    (Convened:  2:12 P.M.)

2          **THE COURT:**  Ms. Nordstrom, did you talk to your

3    client?

4          **MS. NORDSTROM:**  I have, Your Honor.

5          **THE COURT:**  You have?

6          **MS. NORDSTROM:**  I have.

7          **THE COURT:**  Where is he?

8          **MS. NORDSTROM:**  He is here.  Every time he calls,

9    they are Lamar Avenue, Jackson Avenue.  The other times that

10   he has come to court, he stays at a hotel on University

11   Avenue; I go there, and he carpools to here.  So I think

12   he's just having some directional issues.  And he did have

13   car trouble.  Yesterday, he called --

14         **THE COURT:**  Having directional issues?

15         **MS. NORDSTROM:**  Car trouble.  Uh, direction -- yes,

16   having a hard time understanding The Square, I think, Judge.

17         **THE COURT:**  Okay.  Well, you can just relax, and

18   we'll wait a few minutes.

19         **MS. NORDSTROM:**  Thank you, Judge.

20         **MR. MIMS:**  Your Honor, may I step out for just a

21   minute while we wait on the defendant?

22         **THE COURT:**  Yes.

23         The Court is going to be in recess for 15 minutes.

24                    (Recessed:  2:13 P.M.)

25                    (Convened:  2:35 P.M.)

1          **THE COURT:**  Be seated, please.

2          Okay, Mr. Nordstrom, I see your client is here now.

3          **MR. NORDSTROM:**  Yes, Your Honor.

4          **THE COURT:**  Okay.

5          Mr. Bryant, you know your case was set for

6  2 o'clock, right?

7          **THE DEFENDANT:**  Yes, sir.

8          **THE COURT:**  You weren't here.  You were here at

9  2:30.

10          **THE DEFENDANT:**  Yes, sir.  I had car problems.

11          **THE COURT:**  Car problems?

12          **THE DEFENDANT:**  Yes, sir.

13          **THE COURT:**  What kind of problems?

14          **THE DEFENDANT:**  My belt in my -- what do you call

15  it at the bottom?

16          **UNIDENTIFIED SPEAKER:**  The pulley.

17          **THE DEFENDANT:**  The pulley had jumped out of my

18  car.  So I had to call my brother to -- call my brother to

19  come get me, my girlfriend, and the car.  And then I tried

20  to get a rental car to make it here, and then I didn't have

21  no way to pay for it.

22          **THE COURT:**  Where did you come from today,

23  Greenville?

24          **THE DEFENDANT:**  Greenville, Mississippi.  Yes, sir.

25          **THE COURT:**  Okay.  All right.  Sometimes cars break

4

1   down.  I've had them break down, too.  I'll accept that.

2           All right.  Ms. Nordstrom, would you let your

3   client come up and stand around this table.  You can just

4   keep your distance, if you want to.  Whatever you think is

5   safe.

6           **MR. NORDSTROM:**  Your Honor, Mr. Bryant has been

7   vaccinated.  He brought a copy of his vaccination card.  So

8   I just wanted the Court to know that.

9           **THE COURT:**  Okay, good.

10          I don't know if you were here earlier,

11  Ms. Nordstrom, when we talked about it.  But we had a

12  hearing here just last week, I think it was, and one of the

13  staff members has COVID.

14          **MS. NORDSTROM:**  Oh, goodness.

15          **THE COURT:**  Sitting right in here.

16          I believe you were here, Mr. Mims, last week,

17  weren't you?

18          **MR. MIMS:**  I don't recall it, Your Honor.

19          **THE COURT:**  Okay.

20          **MR. MIMS:**  It may have been somebody else.

21          **THE COURT:**  You think I could confuse you with

22  someone else?

23          **MR. MIMS:**  It's possible.  I don't know.

24          (LAUGHTER.)

25          **MR. MIMS:**  My memory is getting faulty, though, as

1  I get old.

2  **THE COURT:**  Yeah.  With these masks, it's hard to

3  figure out who you're talking to.

4  All right, Mr. Bryant.  On a previous day, as you

5  know, you entered a plea of guilty to being a felon in

6  possession of a firearm, and you're up before the Court now

7  for sentencing.  Is there anything you wish to state to the

8  Court before sentencing?

9  **THE DEFENDANT:**  Yes, sir.

10  **THE COURT:**  All right.

11  **THE DEFENDANT:**  First of all, I want to apologize

12  -- I want to apologize to the Court for me being here.  And

13  second of all, sir, I would like to apologize for me putting

14  a little stress on my children, my four children.

15  **THE COURT:**  Now, look, I can't understand you.  I'm

16  going to let you just pull it down just below your lips

17  there.  And speak out --

18  **THE DEFENDANT:**  I apologize, sir.

19  **THE COURT:**  -- louder.

20  **THE DEFENDANT:**  I apologize first for being here,

21  being in court today.  And second of all, I apologize for me

22  putting stress on my children.  And I apologize -- I'm real

23  nervous right now, sir, because I had to run here.

24  **THE COURT:**  Well, all right.  You had some good

25  letters that have been written about you.

1    **THE DEFENDANT:** Yes, sir, I sure appreciate that,

2    sir.

3    **THE COURT:** Some people are surprised that you are

4    before the Court on such a serious charge as possessing

5    firearms when you're not supposed to.

6    Anything else?

7    **THE DEFENDANT:** Yes, sir. Yes, sir. One more

8    thing. If you will -- if the Court will -- if the Court

9    will, I'm saying, put a little -- give me a little mercy

10   because -- a little mercy, because I've been doing good.

11   **THE COURT:** You're going to have to speak slower.

12   **THE DEFENDANT:** Yes, sir. I said I want to -- I

13   said I hope the Court will give me a little mercy -- a

14   little mercy, a little mercy, because I've been doing good.

15   I've been doing good. I've been doing everything I've been

16   asked. I've been going to counseling, and I've been doing

17   good with that. Good with that. I got another promotion at

18   my job. I'm doing good with that. And I've been doing good

19   with my PO -- PO I have.

20   Thank you, sir.

21   **THE COURT:** All right.

22   Ms. Nordstrom, anything you wish to say?

23   **MR. NORDSTROM:** Thank you, Your Honor. I basically

24   put all of it in my sentencing memorandum. But I just want

25   to highlight a few things.

1     Mr. Bryant stands here before you. He's a single

2  father. He is raising four children by himself. He is

3  responsible for those people, their legal and their physical

4  custody. Their mothers are not a part of their lives. And

5  he has not shirked his duties. He is the one that signs the

6  report cards, signs them up for little league, takes them to

7  the doctor, makes sure there's food on the table. And too

8  often, Judge, in this courtroom and in others, men come

9  before us who are not doing that; who are really shirking

10  their duties to their children. But Mr.~Bryant has stepped

11  up and is doing just that.

12     I wanted to highlight some of the letters that

13  you've received, three letters in particular from his

14  employer, people in his employment. His supervisor states,

15  "Mr.~Bryant always arrives on time and performs his job

16  without any issues. He is very thorough with his duties and

17  does not hesitate to assist in other departments as

18  requested."

19     There's a letter from the administrator of this

20  nursing home we've provided. She states, "Antoine is an

21  essential piece to our River Heights family. He always

22  shows up to work when scheduled and completes his tasks in a

23  timely manner. He does not only complete tasks but he

24  assures that they are done correctly, which is something I

25  admire about him. I've never heard him complain. And I

1  would honestly say that he goes above and beyond his job

2  duties.  For example, one of our residents frequently lies

3  out on the floor, requiring someone to pick him up.  Antoine

4  will stop what he is doing to pick our resident up and even

5  walks our resident back to his room.  This can happen

6  anywhere between five to ten times a day, and Antoine is

7  always there to pick him up.  Antoine's efforts to help

8  others extends past residents, as I have often observed him

9  lending a helping hand to his coworkers.  In essence,

10  Antoine is one of the hardest workers I have at this

11  facility.  And I appreciate his dedication and commitment to

12  his job.  I have also come to know Antoine as a loving

13  single father who is present in his children's lives."

14        There's a letter from a social work that works at

15  this nursing home named April Stribling.  She states, "Since

16  the time of meeting Mr. Bryant, I have seen that he is a

17  loving single father who loves and takes care of his

18  children.  Mr. Bryant has done great community service with

19  our facility when it has come to feeding the needy and

20  clothing them for the holidays.  He has been a model

21  employee.  The residents love him, and he would go above and

22  beyond his job duties to ensure their safety, and that when

23  he leaves for the day, they are smiling.  I don't know what

24  actions that may have led to Mr. Bryant committing this

25  crime, but I don't think he is a menace to the community

9

1    that he resides, and that he could live his life as a model

2    citizen if given another chance."

3           Your Honor, he has been on some form of bond for

4    the last two and a half years.  No record of any arrests or

5    violence within that time period.  He has one prior felony

6    that's now over 11 years old.  It was a property crime.  He

7    has been basically a model participant --

8           **THE COURT:**  It was burglary, wasn't it?

9           **MR. NORDSTROM:**  Oh, no, sir.  No, sir.  Receiving

10    stolen property, I believe.

11           **THE COURT:**  Receiving stolen property?

12           **MR. NORDSTROM:**  Yes.

13           **THE COURT:**  Okay.

14           **MS. NORDSTROM:**  Something -- no.  Nothing violent,

15    Your Honor, in terms of his felony conviction.

16           **THE COURT:**  Some people don't consider burglary a

17    violent crime, but legally it is.

18           **MR. NORDSTROM:**  I can give you the exact --

19           **THE COURT:**  That's okay.  It was another defendant

20    I think I was thinking about.

21           **MR. NORDSTROM:**  Okay, thank you, Your Honor.

22           So he has -- did test positive for marijuana at the

23    beginning of his probation.  But this Court, thankfully,

24    ordered that he participate in counseling, and he has

25    faithfully been in counseling since then, and has not tested

1  positive.  One of the requirements of his job is that he's

2  routinely tested.  He's never tested positive there.  His

3  counselor has also provided a letter to the Court.  And she

4  says that Mr.~Bryant has been cooperative, interactive, and

5  receptive to counseling.  She goes on to state, "Mr.~Bryant

6  has reliably attended and participated in bimonthly sessions

7  after getting off work.  He works full time as a janitor at

8  a local nursing home where pre-employment random drug

9  screens are administered as a condition of his employment.

10  He presents as grateful for the work, and states he enjoys

11  interacting with residents and staff there."

12       Your Honor, you've also received a letter from his

13  minister who states that Mr.~Bryant is a faithful member of

14  the church, and he brings his four children there weekly.

15       Your Honor, I think this case -- I've asked for a

16  downward variance in my sentencing memorandum.  I believe

17  there's also a downward departure that may be able to be

18  applied, which would be 5H1.6, which is his familial

19  responsibilities.  It's unclear what would happen to these

20  children if he is locked up for a period of time.  He is

21  their sole provider.  His mother is deceased.  The mothers

22  of the children are methamphetamine addicts and are not a

23  part of these children's lives.  As this Court is well

24  aware, it is tasked with providing a sentence that is

25  sufficient but not greater than necessary to achieve the

1   3553(a) factors.

2          Mr. Bryant is gainfully employed; has recently

3   received a job promotion.  He's sober.  He is religiously

4   attending substance abuse treatment.  He's -- and, again, as

5   I've highlighted, he is the sole provider for these four

6   children.

7          And for these reasons, Your Honor, we're asking for

8   the Court to depart from the guidelines; to provide him with

9   a probationary sentence.  Because he's shown you, Judge, he

10  can do this.  He can take care of these kids.  He can keep

11  gainfully employed; he can stay sober.  And for those

12  reasons, Your Honor, we would ask for a probationary

13  sentence.

14         Thank you.

15         **THE COURT:**  Thank you.

16         Mr. Mims, anything you wish to add on behalf of the

17  government?

18         **MR. MIMS:**  Yes, sir, Your Honor.

19         In most of these sentencings that we deal with, we

20  see mitigating factors and aggravating factors for the Court

21  to consider.  In reviewing the PSR, and the sentencing

22  reference letters, and Mr. Nordstrom's position statement,

23  I've seen a lot of good things said about Mr.~Bryant.  And I

24  don't for one second question or dispute the things that the

25  people wrote in their letters about Mr. Bryant.  I don't

1    dispute that at all.  And those are certainly mitigating

2    factors for the Court to consider.  But in this case,

3    there's always two sides usually to every coin.  And in this

4    case, the thing that concerns me from the aggravating

5    standpoint is we had a confidential informant that went in

6    and bought drugs from Mr.~Bryant and who said he had seen

7    Mr.~Bryant sell drugs and firearms from his residence.  And

8    that's a completely different person than the person you're

9    reading about when you read about these letters, and the

10   position statement, and so forth.  And I just think that's a

11   different side of the coin that the Court should consider in

12   determining what the appropriate verdict would be, Your

13   Honor.  Or the appropriate sentence.

14            Thank you, Your Honor.

15        **MR. NORDSTROM:**  Your Honor, I would just like to

16   make one note.

17        **THE COURT:**  All right.

18        **MS. NORDSTROM:**  We're talking about $10 worth of

19   marijuana.  That's what the CI was -- went in and was tasked

20   to go in and to purchase.  And we went all through this all

21   through the motion to suppress hearing.  But it was $10

22   worth of marijuana.  Never asked to buy a gun from

23   Mr. Bryant.  So, I think that's important for the Court

24   to note.

25        **THE COURT:**  Okay.

1      **PROBATION OFFICER:**  Your Honor, I do just want to

2   clarify for the record.  He does have a simple burglary

3   conviction back in 2008.  I believe the details of that are

4   they went into a trailer and stole some wire and stuff out

5   of a trailer, I believe.  And then after that, he had the

6   theft by receiving.  But just....

7      **THE COURT:**  Okay.  But he didn't get -- he doesn't

8   have a point added to his computation for the guidelines on

9   that particular charge.  I was looking at it while counsel

10  was talking to me about it.  For some reason, the warrant on

11  that burglary charge was -- the bench warrant was recalled.

12  It was in Concordia Parish, Louisiana.  But he -- well, I

13  don't know what the situation is, but the warrant was

14  recalled.  I thought I remembered reading a burglary charge

15  involving him, but I'm not -- I don't think that -- I don't

16  know why the warrant was recalled.

17      But another thing, Ms. Nordstrom, this is a

18  conditional plea, isn't it?

19      **MR. NORDSTROM:**  That is correct, Your Honor.

20      **THE COURT:**  Okay.  Now, in computing the

21  guidelines, he's given -- and in accordance with the Plea

22  Agreement, he's given credit for taking responsibility for

23  committing this crime, and yet the validity of the search

24  and of the search warrant is being contested.  What do you

25  say to that?

14

1          **MR. NORDSTROM:**  Well, there is case law on this,

2     Your Honor.  I don't have the cite in front of me.  And I

3     didn't know this would be discussed.  But there is Fifth

4     Circuit case law directly on this point that he can still

5     receive acceptance of responsibility if we contest the

6     validity of the search, Your Honor.  I can get you that

7     cite, if you'd like.

8          **THE COURT:**  Well, no, I'm not going to --

9          **MS. NORDSTROM:**  And can I --

10         **THE COURT:**  Do you have anything on that, Mr. Mims?

11         **MR. MIMS:**  Your Honor, actually, I've seen it,

12    because I -- it doesn't bother me -- from a prosecutor's

13    standpoint, I don't see how somebody can contest and fight

14    the charges right up till the last second and then say,

15    okay, I'll plead guilty, and then get credit for acceptance.

16    To me, acceptance should be I accept it from the very start

17    and take responsibility for my actions.  However,

18    Ms. Nordstrom was kind enough to educate me on that a few

19    months ago; sent some com case law, and I reviewed it.  And

20    she is absolutely correct on what the case law says.

21         **THE COURT:**  On the -- that the legal contest can be

22    pursued on the validity of the arrest or the validity of the

23    warrant and yet credit given for acceptance of

24    responsibility?

25         **MR. MIMS:**  Yes, sir.

1        **MR. NORDSTROM:** And I would just like it to be

2    noted for the record, since -- when the officers busted down

3    his front door and went in there, they asked him where -- if

4    he had a gun. He showed them where there was a gun. He,

5    since the very beginning, has been honest and trustworthy

6    about possessing this firearm.

7        **THE COURT:** Well, I agree with your -- I was kind

8    of making light of the whole situation. Maybe I shouldn't

9    have. But I agree with your version of the acceptance of

10   responsibility. Probation and I -- officers and I were

11   talking about it earlier today, that there's a difference

12   between the legal -- acceptance of the legal issues involved

13   and the taking and accepting the factual issues involved.

14   So, it can be, and under the statute, I think, it's --

15   Ms. Nordstrom, the statute itself -- or the annotation of

16   the statute does allow acceptance of responsibility even

17   though the legality of the arrest or the legality of the

18   warrant, for example, is in issue, and they can take it

19   however far they want to take it.

20        So he will be given -- is given credit for taking

21   responsibility. The base offense level then in this case

22   would be 13, and -- no, 14. Excuse me. And deducting two

23   points for acceptance of responsibility, the total offense

24   level is 12. And that calls for -- based on what the time

25   that's involved in, calls for 15 to 21 months. And as the

1    Presentence Report says, the Plea Agreement, that is a

2    conditional plea, therefore, according to the statute and

3    the case law, would have no impact on the guidelines in this

4    particular case.  That was something that -- kind of a

5    different issue that we don't see very often.

6            Well, Mr. Bryant, it's -- you do have good letters

7    written about you.  It's admirable that you have -- you're

8    taking care of and supporting your four children in your

9    care.

10           **THE DEFENDANT:**  Yes, sir.

11           **THE COURT:**  The people at your place of employment

12   speak well of you.

13           **THE DEFENDANT:**  Yes, sir.

14           **THE COURT:**  But there wasn't much drugs involved in

15   the sale that you made to the confidential informant.  But

16   nevertheless, it was a sale of drugs out of your house,

17   where a gun was in your house.  And they didn't find any

18   drugs.  When they went back later, there were still some

19   drugs there after you made that sale.  Not much.  As your

20   attorney says, a little marijuana.  But nevertheless, the

21   officers there in Greenville were investigating you, and the

22   Court can't accept that this was just a happenstance that

23   you had a little marijuana and somebody came up and you did

24   it one time, a $10 bag out of your house.  So, the Court is

25   of the opinion that a sentence within the guidelines would

1  be appropriate.  Because of the good words that were spoken

2  and written in your behalf; I think you're taking care of

3  your children.  I understand you're involved with a lady now

4  who could help you on that.  You have a family member who

5  can help you on that, if -- when you're not there.  Because

6  of those things, the Court is of the opinion that a sentence

7  on the low end of the guidelines would be appropriate.

8          And based on these decisions -- or these

9  considerations, it is the sentence of the Court that you be

10  put in the custody of the Bureau of Prisons for a term of 15

11  months, and that you will serve, after that, three years

12  supervised release.

13          No fine is being ordered.

14          There's no restitution applicable.

15          There is a special assessment of $100 for each

16  count.

17          One thing I've been thinking of, Ms. Nordstrom,

18  during this sentencing, do you -- if you were successful in

19  your appeal -- I don't know if you're going to appeal or

20  not.  But if you were, on the search, he probably would have

21  almost served his time before the appeal was decided.  What

22  do you think about -- about his being on bond pending your

23  appeal?

24          **MR. NORDSTROM:**  I would like that.

25          **THE COURT:**  But that's not applicable, if you're

18

1    not going to appeal it.

2         **MR. NORDSTROM:**  Right.

3         **THE COURT:**  So what do you think?

4         **MR. NORDSTROM:**  Well, I need to talk to my client

5    about that.

6         **THE COURT:**  Okay.  Okay.  Well, then -- all right,

7    that's nothing that needs to be decided this afternoon.

8         Following your release from custody, Mr.~Bryant,

9    you'll be placed on three years supervised release.  That

10   during that time, you will have to live up to more strict

11   conditions than the average person.

12        You shall remain drug-free, address any ongoing

13   mental issues, and remain law-abiding.

14        Your house and your property can be searched at any

15   time by the probation officers.  They won't need a warrant

16   to do that.  And otherwise, if you violate any of these

17   strict conditions of conduct, it might mean that you have to

18   have more time in custody.

19        Of course, I don't have to say that during your

20   period of supervised release, you've got to refrain from any

21   unlawful use of any controlled substance or possessing any

22   contraband such as a weapon.

23        There's no restitution involved.  So that doesn't

24   apply.

25        You also, if ordered to, must cooperate in the

1    collection of DNA as directed by a probation officer.

2           So you'll have to live a better life than the

3    average person while you're on supervised release.

4           There are other strict conditions of conduct,

5    standard conditions that you must abide by that have been

6    adopted by the Court.  And I'm sure your probation officer

7    will go over those with you at the proper time.

8           You've lived up to your conditions of supervision

9    while you've been on bond awaiting sentencing.  Do you want

10   to remain under bond until the institution is determined

11   that you'll be serving your time at, or do you want to

12   remain in custody today and let the marshals transport you

13   to the institution?

14          **MR. NORDSTROM:**  We would like to remain out on

15   bond, Your Honor.

16          **THE COURT:**  Okay.

17          **MS. NORDSTROM:**  And have a report date.

18          **THE COURT:**  Have you got the means to --

19   transportation to get to the institution?

20          **MR. NORDSTROM:**  We'll make that happen, Your Honor.

21          **THE COURT:**  Okay.  I'm going to set a date to

22   report.

23          All right.  The Court will set January the 17th,

24   2022, by 2:00 p.m.

25          **MR. NORDSTROM:**  Would that be at the Lafayette

1  County Detention Center, Your Honor?

2          **THE COURT:** Pardon?

3          **MR. NORDSTROM:** Will he receive a letter stating

4  where he will go and he just --

5          **THE COURT:** He'll be notified. I'm not sure how

6  they get it done. And you will, too, of the exact

7  institution.

8          **COURTROOM DEPUTY:** Oh, Your Honor, February 17th is

9  a federal holiday.

10          **THE COURT:** I said --

11          **COURTROOM DEPUTY:** I don't know how that will --

12          **THE COURT:** -- January.

13          **COURTROOM DEPUTY:** January 17th is a federal

14  holiday. I don't know how that will affect the Bureau of

15  Prisons.

16          **THE COURT:** Well, it probably -- take it off.

17  We'll change that. It's a Monday. But we can make it a

18  Tuesday. We'll make it the 23rd.

19          **COURTROOM DEPUTY:** Oh, no, the 23rd is a --

20          **THE COURT:** The 22nd is on a Monday.

21          (Court Conferring with Courtroom Deputy.)

22          **THE COURT:** Yes, the 18th will be a Tuesday.

23          **COURTROOM DEPUTY:** Okay.

24          **THE COURT:** Yeah. All right, so we'll have a

25  record of it, Mr. Bryant, I'm going to ask you and your

1    attorney to sign that, so you'll know -- so we'll know that

2    you understand it.

3              All right.  Anything else from the government?

4         **MR. MIMS:**  No, sir, Your Honor.

5         **THE COURT:**  All right.  Mr.~Bryant, you'll be

6    excused.  And you'll be notified as will your attorney about

7    the institution that's designated for your service.

8         **THE DEFENDANT:**  Yes, sir.

9         **THE COURT:**  You may be excused.

10        **MS. NORDSTROM:**  Thank you, Judge.

11             (Concluded:  3:07 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

22

1                          CERTIFICATE

2          I, Brenda D. Blackburn, Federal Official Court

3     Reporter, in and for the United States District Court for

4     the Northern District of Mississippi, do hereby certify that

5     pursuant to Section 753, Title 28, United States Code, that

6     the foregoing 21 pages are a true and correct transcript of

7     the stenographically reported proceedings held in the

8     above-entitled matter and that the transcript page format is

9     in conformance with the regulations of the Judicial

10    Conference of the United States.

11          Witness my hand, this 21st day of December, 2021.

12

13                          _____BRENDA D. BLACKBURN_____

                            BRENDA D. BLACKBURN, RPR, CCR NO. 1087
14                          FEDERAL OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25